IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT STREET**, an individual, | : | CIVIL ACTION |
| Plaintiff, | : | No.: |
| v. | : | Hon. |
| **ARVCO CONTAINER CORP.**, a Michigan corporation, | : | |
| Defendant. | : | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Robert Street, by and through his attorneys, Kreis, Enderle, Hudgins & Borsos, P.C., hereby brings his Complaint against Defendant, Arvco Container Corporation, and alleges as follows:

## INTRODUCTION

1.  Plaintiff initiates this action to redress violations by Arvco Container Corporation of the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020) ("FFCRA"), the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Michigan public policy. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## PARTIES

2.  Plaintiff, Robert Street ("Plaintiff" or "Street"), is an individual residing in Wyoming, Michigan.

3.  Defendant, Arvco Container Corporation ("Defendant" or "Arvco") is a Michigan corporation which operates a manufacturing facility located in Kalamazoo County where workers

1

produce foodservice, industrial, and government packaging products such as cardboard boxes, cartons, and other materials.

4. At all times relevant herein, Arvco acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Arvco.

5. Arvco maintains a registered office in Michigan and its registered agent can be served as follows: James E. Vanderroest, 845 Gibson St., Kalamazoo, Michigan 49001.

## JURISDICTION AND VENUE

6. The controversy in this civil action falls within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

8. Street began his employment with Arvco on February 11, 2020 as a full-time salaried Split Shift Supervisor.  In this role, Street's job duties included but were not limited to maintaining Arvco's equipment and training its staff members.

9. Throughout his employment with Arvco, Street was a hard-working employee who performed his job well.

10. During his employment with Arvco, Street was earning approximately $70,000 per year plus benefits.

11. Street was primarily supervised by, and reported to, Rafael Ramirez.

12. In early March 2020, the United States began seeing multiple cases of the novel coronavirus ("Covid-19"). Covid-19 is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily

spread from person to person. Older adults and those with chronic health conditions are at particular risk, and there is an increased risk of rapid spread of Covid-19 among persons in close proximity to one another. There is currently no approved vaccine or antiviral treatment for this disease.

13.     On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of Covid-19 in Michigan. That same day, Michigan's Governor Whitmer issued Executive Order 2020-4 declaring a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401, *et seq.*, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31, *et seq*.

14.     On March 18, 2020, the Families First Coronavirus Response Act ("FFCRA") was signed into law. Pursuant to the FFCRA, employees are eligible for:

> Two weeks (up to 80 hours) of paid sick leave at the employee's regular rate of pay where the employee is unable to work because the employee is quarantined (pursuant to Federal, State, or local government order or advice of a health care provider), and/or <u>experiencing COVID-19 symptoms and seeking a medical diagnosis.</u>

15.     On March 23, 2020, Street began experiencing an unknown serious health condition and was exhibiting numerous symptoms including a low-grade fever, shortness of breath, nausea, vomiting, diarrhea, and cough.

16.     On March 26, 2020, Street underwent a health screening with Spectrum Health, which concluded that Street did not qualify for Coronavirus ("Covid-19") testing but considered him to be "unconfirmed positive" for Covid-19.

17. As a result of Spectrum's "unconfirmed positive" diagnosis, Street was placed on medical quarantine for seven (7) days. Street informed his supervisor Ramirez of Spectrum's diagnosis and his medical quarantine the same day.

18. On March 27, 2020, Cheri Perry (Arvco's HR Manager) sent an email to Street asking about the outcome of his medical visit. Street reported to Perry that Spectrum had placed him on a seven (7) day medical quarantine.

19. During his initial quarantine, Street learned that his wife was directly exposed to another person who had actually tested positive for Covid-19.

20. On April 2, 2020, at 10:35 a.m., Perry sent Street an email asking: "Will you be back to work today?" Street responded that he was hoping to return to work on April 3, 2020.

21. On April 2, 2020, at 11:51 a.m., Street sent a text message to Ramirez informing him that he was headed back to Spectrum the next morning to try and get released from quarantine so he could return to work on April 3, 2020.

22. On April 3, 2020, Michigan's Governor Whitmer signed Executive Order 2020-36, which took effect immediately and states, in part:

> It is the public policy of this state that an employer shall not discharge, discipline, or otherwise retaliate against an employee for staying home when he or she is at particular risk of infecting others with COVID-19.

23. On April 3, 2020 (7:12 a.m.), Street sent another text message to Ramirez asking if he was to report for the second shift (assuming he was released). Ramirez responded (7:16 a.m.) that Arvco's second shift had been eliminated and that Street was to begin working on first shift at 5:00 a.m. the next week (April 6, 2020).

24. Later that morning, Street reported to Spectrum for his second health screening and, based on his continuing symptoms and the news of his wife's potential exposure, Spectrum instructed Street to remain on his medical quarantine for another seven (7) days.

25. At conclusion of Street's second medical appointment with Spectrum, Street called Ramirez to advise that Spectrum placed him on another seven (7) day medical quarantine but would not test Street for Covid-19. Ramirez was upset by this news because he wanted Street back to work.

26. Troubled by Ramirez's tone and demeanor on their phone call, Street followed with a text message to Ramirez (11:50 a.m.), explaining his visit to Spectrum and its decision to extend Street's medical quarantine. Street also stated concern for his job and his expressed hope that Ramirez didn't think Street was lying about the quarantine.

27. Ramirez promptly responded to Street via text message (11:52 a.m.) stating that "You need to contact Cheri [Perry]" (Arvco's HR Manager).

28. At approximately 1:00 p.m., Street called Perry as directed by Ramirez and, during that call, Perry promptly terminated Street's employment with Arvco. Street requested clarification several times from Perry as to whether he was being furloughed or terminated, and Perry clearly indicated and reinforced that Street's employment was in fact being terminated due to "a position elimination."

29. At the conclusion of the call (1:16 p.m.), Perry sent an email to Street confirming his termination due to the elimination of his position, effective April 3, 2020.

30. Shortly after his termination, Street sent a text message (1:22 p.m.) to Ramirez stating: "I went from reporting at 5 am Monday to terminated after I reported possible Covid contact. I don't think this is lawful be we will see. Thanks and good luck."

31. Later that day, on April 3, 2020, Street drafted and sent an email to Perry stating:

I feel strongly that arvco broke the law by firing me because of my possible contact with a coronavirus positive, and unconfirmed positive phone screening with Spectrum. I would like to speak to Greg the owner as well as the HR manager about my position there or at the very least severance. I was scheduled to start work Monday at 5 a.m. on day shift because second shift was eliminated due to lack of business. I was told yesterday that I wasn't being terminated, I have a text to prove it. I did the right thing throughout this entire process and fact probably saved the plant being infected and possibly even lives. I fully intend to seek a remedy to the situation even if I have to get legal help.

32. On Monday, April 6, 2020, at 9:45 a.m., Perry responded to Street and stated "I am looking into your concerns and will get back to you."

33. On April 6, 2020, at 12:20 p.m., in an attempt to cover up its unlawful acts, Arvco sent a letter to Street stating that: "your position as Split Shift Supervisor is being furloughed temporarily due to business downturns related to COVID-19. Your last official work day will be Friday April 3, 2020. This furlough is anticipated to expire on May 4, 2020."

34. Arvco's April 6, 2020 letter concluded as follows: "Please be assured that this action in no way reflects dissatisfaction with your job performance."

35. On April 30, 2020, Street sent an email to Perry indicating that he was available to return to work.

36. Arvco began calling employees back to work in May/June, 2020. However, Arvco never called Street back to work.

37. Instead, in June 2020, an Arvco recruiter called one of Street's acquaintances and offered him Street's former position (that was supposedly being eliminated). Street's acquaintance turned down the job because he now lives in a different state.

38. Street's acquaintance subsequently called Street and informed him that Arvco was seeking to fill Street's former position.

39. Arvo never intended to call Street back to work; rather, its abrupt change from a termination to a furlough was a pretext to cover its true intention—to retaliate against Street for exercise his right to leave due to his Covid-19 medical quarantine.

40. The fact that Arvco never called Street back to work but instead offered his position to someone else is additional evidence of pretext.

41. Despite his reasonable efforts, Street has been unable to obtain comparable employment since Arvco wrongfully terminated his employment and, as a result, he continues to incur damages.

## COUNT I

### VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT ("FFCRA") & THE FAIR LABOR STANDARDS ACT ("FLSA")
### (Wrongful Termination; Unpaid Wages; Retaliation)

42. Street hereby incorporates all of the preceding paragraphs.

43. The FFCRA provides for up to 80 hours of paid sick time to eligible full-time employees who are unable to work or telework due to the effects of Covid-19 through the Emergency Paid Sick Leave Act. *See* FFCRA at §§ 5102(a) and (b).

44. The FFCRA has expressly identified that enforcement of and all penalties arising from violations of the Emergency Paid Sick Leave Act shall be governed by relevant sections of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., as set forth in more detail below.

45. Defendant is engaged in an industry affecting commerce and employees, is a private entity, and employs fewer than 500 employees. FFCRA at § 5110(2)(B).

46. Plaintiff was an eligible employee as defined by Section 3(e) of the FLSA (29 U.S.C. § 203(e)), who had "been advised by a health care provider to self-quarantine due to concerns related to COVID-19" and/or was "experiencing symptoms of COVID-19 and seeking a medical diagnosis" under the FFCRA, § 5102(a)(2) and (3).

47. Defendant knew that Plaintiff was an eligible employee within the meaning of the FLSA and the FFCRA.

48. Plaintiff requested sick leave for the two-week period (from in or about March 26, 2020 to on or about April 10, 2020) that he was advised to self-quarantine by his physician due to Covid-19 concerns.

49. Defendant was required to pay Plaintiff's "regular rate of pay up to $511 per day, and $5,110.00 in the aggregate" for the two-week emergency paid sick leave period due to Covid-19 concerns. FFCRA at § 5110(5)(A)(ii)(I).

50. Defendant denied Plaintiff leave under the Emergency Paid Sick Leave Act of the FFCRA and failed to compensate him for his regular rate of pay for the required 80-hour sick leave period.

51. An employer who fails to pay an employee his regular rate of pay under the FFCRA is "considered to have failed to pay minimum wages in violation of section 6 of the FLSA (29 U.S.C. § 206)." FFCRA at § 5105(a)(1).

52. It is also unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee" who exercises his rights to "take leave in accordance with this Act." *Id.* at § 5104. "An employer who willfully violates section 5104 shall . . . be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215(a)(3))." *Id.* at § 5105(b)(1).

53. Additionally, an employer who in any way disciplines, discriminates or retaliates against, and/or discharges an employee in violation of this Act is subject to the penalties described in sections 16 and 17 of the FLSA (29 U.S.C. § 216, 217) with respect to such violation. *Id.* at § 5105(b)(2). Penalties under sections 16 and 17 of the FLSA include, but are not limited to, lost

8

wages, an equivalent amount of liquidated damages, and attorney's fees and costs. *See* FLSA, 29 U.S.C. §§ 216-17.

54. Defendant willfully (1) denied Plaintiff's request for qualifying paid sick leave under the FFCRA from in or about March 27, 2020 until on or about April 10, 2020; (2) failed to compensate Plaintiff his regular wages for same; (3) terminated Plaintiff in retaliation for his request for emergency paid sick leave and his Covid-19 concerns in violation of the FFCRA and the FLSA; and (4) refused to rehire him following his medical release to physically return to work.

55. Defendant's actions constitute violations of the FFCRA and the FLSA.

## COUNT II

## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

56. Street hereby incorporates all of the preceding paragraphs.

57. On April 3, 2020 Defendant wrongly terminated Plaintiff in contravention of Michigan public policy.

58. Defendant terminated Plaintiff for his refusal to violate the FFCRA which grants employees up to two weeks of paid sick leave if the employee is "experiencing COVID-19 symptoms and seeking a medical diagnosis."

59. Plaintiff exhibited symptoms of an individual who potentially is positive of Covid-19, including but not limited to a fever, headache, and nausea.

60. Plaintiff sought medical attention, including but not limited to, being tested for Covid-19.

61. Defendant discharged Plaintiff in illegal retaliation for exercising a right conferred by a well-established legislative enactment (*i.e.*, the FFCRA).

62. Plaintiff had a right to paid sick leave when exhibiting symptoms of Covid-19 and seeking medical attention to confirm the existence of the virus under the Families FFCRA.

63. Defendant terminated Plaintiff because of his attempted exercise of this right.

64. Defendant in bad-faith, wrongfully, maliciously, and intentionally terminated Plaintiff's employment in violation of the public policy of the State of Michigan, causing him to be humiliated in the process.

65. Defendant's termination of Plaintiff in violation of the public policy of the State of Michigan has caused significant economic and emotional hardship.

66. Defendant's termination of Plaintiff in violation of public policy of the State of Michigan has damaged him by loss of earnings and earning capacity; loss of benefits and future benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## **REQUEST FOR RELIEF**

WHEREFORE, Street requests relief and damages as follows:

a. A declaratory judgment that Arvco's actions alleged herein violate the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020), *et seq.*, and attendant regulations;

b. A declaratory judgment that Arvco's actions alleged herein violate the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and attendant regulations;

c. A declaratory judgment that Arvco's actions alleged herein violate Michigan public policy;

d. Granting a monetary judgment in favor of Street and against Arvco and awarding Street all economic damages, liquidated damages, compensatory damages, and punitive damages available under the law;

e. Awarding reasonable attorneys' fees and costs incurred by Street in filing this action as provided by statute;

f. Awarding pre- and post-judgment interest to Street on these damages; and

g. Awarding such other and further legal or equitable relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: July 14, 2020

Respectfully Submitted,

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
Thomas J. Cedoz (P82094)
Kreis, Enderle, Hudgins & Borsos, P.C.
8225 Moorsbridge, PO Box 4010
Kalamazoo, Michigan 49003
(269) 324-3000
jyoung@kehb.com
tcedoz@kehb.com

*Attorneys for Plaintiff*